**Ramone L. STROUD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 95–SC–197–MR.**

Supreme Court of Kentucky.

May 23, 1996.

Daniel T. Goyette, Jefferson District Public Defender, J. David Niehaus, Deputy Appellate Defender of the Jefferson District Public Defender, Louisville, for Appellant.

A.B. Chandler III, Attorney General, Vickie L. Wise, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Stroud of first-degree robbery and second-degree escape. He was sentenced to a total of 31 years in prison.

The questions presented relate to the selection of the members of jury venire, the imposition of an enhanced sentence and whether the defendant was guilty of second-degree escape as a matter of law.

The robbery victim testified that he was approached by Stroud on a Louisville street who stuck a gun in his stomach and took $170 from him. Stroud testified in his own behalf to the effect that the two had been negotiating about a "taxi ride." The jury found Stroud guilty of first-degree robbery. After a sentencing hearing, the jury imposed an initial penalty of 15 years in prison which was enhanced to 30 years upon conviction as a persistent felony offender in the second degree. The parties entered into a plea agreement as to the escape charge which was based on the fact that Stroud had disconnected a bracelet required to be worn by him by the home incarceration program in Jefferson County. Stroud was required to serve one additional year on the second-degree escape charge to run consecutively to the enhanced 30 year sentence for a total of 31 years in prison. This appeal followed.

Stroud's first allegation of error is that members of the jury panel were improperly selected because the trial judge allowed a jury pool official to choose members of the panel rather than have such a selection made in open court.

We affirm the trial court for two reasons. First, this issue was not properly preserved for appellate review. *Copley v. Commonwealth,* Ky., 854 S.W.2d 748 (1993); RCr 9.22. RCr 9.34 mandates that any challenge to the jury selection process must "precede the examination of the jurors." *Brodgen v. Commonwealth,* Ky., 476 S.W.2d 192 (1972).

In addition, the arguments presented by Stroud are totally without merit. It is not the first time this type of argument has been presented. RCr 9.30(1)(a) states that the circuit court clerk shall draw names from the jury box in open court sufficient to compose an actual jury in a jury trial. Subsection 2 of the rule provides that the jury selection process shall be conducted in accordance with

Part Two (2) of the Administrative Procedures of the Court of Justice. RCr 9.30 makes no reference of any kind to prior stages of determining the composition of a jury panel. Sections Two through Sixteen of the Administrative Procedures of the Court of Justice provide that a jury pool be randomly selected by a computer from registered voters and adults holding drivers licenses. The procedure also allows the chief circuit judge, or a designee thereof, to select a sufficient number of names from this randomized list to constitute a jury pool. There is no requirement that any of these steps be performed in open court.

In this case, the jury pool designee filed a "certificate of randomization" verifying the prospective jury panel members as being randomly selected from the pool of those available for such service.

RCr 9.30 requires only that the selection of the actual petit jury from the jury panel be in open court. The random selection of the names which consist of the jury panel from which the actual petit jury is chosen is not required to be performed in open court. The administrative procedure was correctly followed in this case. *Commonwealth v. Nelson*, Ky., 841 S.W.2d 628 (1992) determined that statutes and regulations pertaining to the impaneling of juries, the duty of judges and other officials are not mandatory and will not result in reversal unless a substantial deviation from those statutes or regulations occur. In this case, there was no substantial deviation, or any deviation of any kind.

■ Stroud contends that he was ineligible for enhancement because the second-degree PFO statute cannot enhance a conviction of first-degree robbery. He claims that the trial judge improperly enhanced his 15 year sentence on the robbery charge to 30 years after finding him guilty of being a second-degree PFO. The method of enhancement of Stroud's sentence following conviction as a second-degree felony offender was proper pursuant to KRS 532.080(5) and KRS 532.060(2).

Stroud's reliance on *Offutt v. Commonwealth*, Ky., 799 S.W.2d 815 (1990), is misplaced. *Offutt, supra*, stated that the foundation of our conclusion was that KRS 532.080 provides for enhanced penalties only in lieu of sentences assessed under KRS 532.060. *Offutt* distinguishes a conviction of murder indicating that although it is a felony, it is a capital offense and therefore sentencing is determined by KRS 532.030(1). In this case, Stroud was sentenced to 30 years as a result of his status as a second-degree PFO.

KRS 532.080(5), when read in connection with KRS 532.060(2) supports this view. Stroud was convicted of first-degree robbery, a Class B felony. The next highest degree for the offense would be a Class A felony which pursuant to KRS 532.060(2)(a) has a penalty of not less than 20 years nor more than life. The sentences imposed in this case and the enhancement ordered were proper.

■ Finally, Stroud argues that he could not be subject to charges of escape because he was not in custody as required by the statute while participating in the Home Incarceration Program. We disagree.

A careful review of the record indicates that Stroud was made aware of and signed his name indicating his understanding of an agreement with the terms and conditions of the home incarceration program. Thus he waived any challenge to the custody imposed by the program by virtue of his participation therein.

Violation of the Home Incarceration Program could result in a second-degree escape. KRS 520.030. Stroud initialed the documents explaining the program and otherwise affixed his full signature to the document which says in part, "I understand the penalty for escape, notice of absence and loss of equipment." Participation in the Home Incarceration Program does constitute custody sufficient to support a charge of escape in the second degree.

We are persuaded by the reasoning of the Ninth Circuit United States Court of Appeals in *United States v. Draper*, 996 F.2d 982 (9th Cir.1993), when they observed that a narrow technical reading of the term "custody" is not appropriate for the purposes of determining escape. A legal dictionary notes that the term "custody" is very elastic and may mean

actual imprisonment or physical detention or mere power, legal or physical, of imprisoning, or of taking manual possession. Persons on probation or parole or released on bail or on their own recognizance, have been held to be in custody for the purpose of habeas corpus proceedings. *Black's Law Dictionary,* 6th ed., 1990, p. 384.

The factors relied upon in *Cooper v. Commonwealth,* Ky.App., 902 S.W.2d 833 (1995), which determined custody to be lacking, were present in this case. Stroud participated in the Home Incarceration Program and was aware of the rules and regulations of the program. An examination of the record refutes the contention by Stroud that he was not provided with the necessary paperwork regarding his participation in the program. The record contains an agreed order signed by the trial judge, Stroud and his counsel which explicitly states the conditions and limitations of the program.

The activities and behavior of Stroud were subject to strict surveillance and monitoring, and custody as it relates to escape, must be interpreted more broadly than in other situations such as *Cooper, supra,* where the prisoner is requesting jail-time credit.

It is the holding of this Court that RCr 9.30 requires only that the selection of the actual jury from the jury pool be made in open court. The procedure authorized by the rules and the administrative procedures of this Court permits the Chief Circuit Judge or a designee thereof, to select a sufficient number of names from the randomized list to constitute a jury pool. It is the further holding of this Court that a violation of the Home Incarceration Program properly resulted in a charge of second-degree escape as provided in KRS 520.030.

The judgment of conviction is affirmed.

STEPHENS, C.J., and BAKER, GRAVES, LAMBERT and STUMBO, JJ., concur.

KING, J., not sitting.